1 | Alex A. Vyalkov
8262 Sunny Creek Way
2 | Sacramento, CA 95823
(916) 752-2348
3 | Plaintiff in Pro Se

**FILED**

AUG 2 9 2025

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

5 | Julius M. Engel, JD
314 Kelly Court
6 | Sacramento, CA 95838
(916) 470-4102
7 | juliusengelesq@yahoo.com

8 | Plaintiff in Pro Se

9

10 |                  UNITED STATES DISTRICT COURT
11 |                  EASTERN DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| 13 Alex A. Vyalkov, and | ) Case no. 2:25-cv-2478-DAD-AC (PS) |
| 14 Julius M. Engel, | ) **VERIFIED** |
| | ) **COMPLAINT FOR MONEY DAMAGES and** |
| 15 Plaintiffs, | ) **INJUNCTIVE RELIEF:** |
| 16 vs. | ) **1. Conspiracy** |
| | ) **2. Wrongful Discharge** |
| 17 United Guard Services of | ) **3. Breach of Contract** |
| America (An international Labor | ) **4. Unfair Labor** |
| 18 Union,) Michael Burke, Kyle | **Practices(NLRA)** |
| 19 Sprague, Kristopher Jimenez, | **5. Racketeering \*(RICO)** |
| and | **6. Violation of the Due** |
| 20 Paragon Systems Inc., An | **Process Clause 5th** |
| Alabama Corporation. | **Amendment US constitution** |
| 21 | **7. Request for Class Action** |
| | **Status** |
| 22 Defendants. | **8. Request for Court** |
| | **Appointed Counsel for** |
| 23 | **Class Action Status** |
| | **9. Request a Special Master** |
| 24 | **be Appointed** |
| | **10.    Request for an Audit** |

25

26 | **\*DEMAND FOR JURY TRIAL\***

27

28 | Plaintiffs Alex A. Vyalkov and Julius M. Engel allege;

## JURISDICTION

1. This court has jurisdiction in this matter under 28 USC 1331, as it is a federal question under federal law or the US constitution, to wit; National Labor Relations Act (NLRA), 29 USC 151-169; and Racketeer Influenced Corrupt Organization Act (RICO)18 USC 196-1968 et seq. and the Due Process Clause of the 5th Amendment US Constitution.

2. Co-plaintiffs also assert jurisdiction under 28 USC 1367, supplemental jurisdiction.

## FACTUAL BACKGROUND

3. At all times herein mentioned United Guard Services of America (USDOA) is an international labor union established under the NLRA. local #223 is the region local for Sacramento California. All the events complained of herein occurred in Sacramento County California.

4. At all timed herein mentioned co-plaintiffs Alex Vjalkov and Julius M. Engel, were employed as fulltime fully tenured protective security officers (PSO) employed by Paragon Systems an alter ego for Dept of Homeland Security/ Federal Protective Service; and were members of UGSOA local #223. They were fee paying members of the represented unit.

5. PSOs under UGSOA in Sacramento number about 150 persons and
   are a qualified class of class action plaintiffs;

6. At all times herein mentioned Defendant Michael Burke is
   the district manager of UGSOA which governs local #223;

7. At all times herein mentioned, Defendant Kyle Sprague is
   the present vice-president of UGSOA local #223;

8. At all times herein mentioned Defendant Kristopher Jimenez
   is the president of USGOA local #223;

9. At all times herein mentioned Defendant Paragon Systems
   Inc, an Alabama Corporation, is the employer of co-
   plaintiffs and one Kris Canares (dismissed PSO) as the
   alter ego of DHS/FPS.


**ALLEGATIONS**

**I**

**CONSPIRACY**


10.    **As to Co-Plaintiff Alex A. Vyalkov:** Plaintiffs
incorporate herein all prior allegations of this complaint.
On or about July 15, 2025 defendants agreed to conspire
against the employment of Co-Plaintiff Vyalkov. On said
date Vyalkov was involved in an altercation with a naked
homeless man with one leg in the underground parking lot of
this courthouse (501 "I" St.) who was setting a fire and

damaging federal property. He was with his partner one PSO Kris Canares. The subject injured Vyalkov by spraying him with a fire extinguisher and causing plaintiff to spit up blood. A court security officer named "Tim" assisted in the apprehension and ended the matter without further injury. Vyalkov 57 years (a month away from 58) old and a native of Ukraine was unceremoniously terminated by Paragon without any due process or full discovery. This though he in fact had some 23 years with the service. He was a tenured employee per the collective bargaining Agreement (CBA) which provides for such status after a 90 day probationary period of at-will employment (see exhibit "A" sec. 1.3). He **was given no progressive discipline** as provided for by the CBA (see both exhibits "A(CBA for 2021-2024 -extended to March 2015)" &"B (CBA 2025-2028)" **sec. 12.1).** In fact it was at best a training issue not a disciplinary matter. Much less a dismissal matter. UGSOA provided no representation whatsoever. They allegedly filed a grievance and did not pursue it. Plaintiff is still ignorant of its status. Co-plaintiffs still do not know if or when the grievance has been formally denied or if denied by operation of law/default due to no timely denial. This because Defendants UGSOA officers Sprague and Jimenez will not return phone calls or emails. Consequently, this leaves

co-plaintiff blind to calculate later required time frames
for arbitration and due process. This is malicious conduct
by the union defendants. The union has not filed for an
arbitration and the time limit is short. USCOA has not done
a disciplinary arbitration in at least ten years. No
misconduct was ever alleged just second guessing Vjalkov's
actions. PSO Carares was also terminated without due
process this in conspiracy of all the named defendants
herein. Canares also was beyond his 90-day probation
period. The exculpatory statement of CSO "Tim" has yet to
be produced and others Id.


11.    **As to Co-Plaintiff Julius M. Engel:** Plaintiff's
incorporate herein as if set forth in full all prior
allegations of this complaint. On or about October 21, 2022
defendants formed a conspiracy to deprive Engel of his
employment and to annoy and vex him to that end. On June 2,
2023 Engel was refused a place on the schedule for no good
cause. Engel had 4 years experience and was not "at-will"
per the CBA (see both exhibit "A" &"B" sec. 1.3).
Nevertheless, defendants Burke and UGSOA breached their
duty by not representing him; a tenured employee when he
was not put on schedule. This was in retaliation for filing
a personnel complaint against two FPS officers. Including

1  FPS Officer Richard Castrellon who took a picture of

2  plaintiff in the men's room and very recently forced a PSO

3  to pose as a ballerina with his hands up to humiliate him

4  and feminize him. This is same-gender sexual harassment;

5

6  hostile working environment. Castrellon forced Engel to

7  undergo an unnecessary fitness for duty exam for

8  retaliation purposes. Engel only missed one day of work in

9  4 years. He also worked copious overtime. This was clearly

10

11  unwarranted. Engel also criticized of union representation

12  **12.**    Castrellon used a Dr. Fidel Realyvasquez who was

13  severely disciplined for doing unnecessary surgeries in

14  Redding to swindle US Medicare out of millions of dollars.

15  He paid a half billion in damages; but miraculously kept

16  his license and was not charged with murder though his

17

18  crimes caused at least one death for which he paid a

19  million. This is the character that evaluates federal

20  security officers. This is unacceptable. The union did

21  nothing about allowing this man to continue. Realyvasquez

22  did not allow Engel to even take the test in the first

23

24  place even though Engel signed all encompassing waivers. He

25  did not do the METZ test as required in fact he does not

26  have the METZ test making his office unqualified to do the

27  fitness for duty exams to begin with. Defendant Paragon

28  sent Engel to their own approved tester on condition Engel

pay for it and then he would be put back on schedule. Engel passed om June 2, 203 and Paragon reneged. The union did nothing; this is unfair, personal dislike and discriminatory.

13.    Engel passed the test on January 21, 2023 but Realyvasquez falsified the results to fail him after Engel was told he had passed. He passed again in April 2023 but FPS Castrellon would not sign off on it because of two different authorized doctors signing off on the pass. This is a matter not under Engel's control. It also likely a contrived excuse to harass, vex and annoy Engel.

14.    Paragon agreed to put co-Plaintiff Engel on the schedule if Engel passed a fitness for duty exam at his expense. This he successfully accomplished on June 2, 2023 (see exhibit "C" a true copy attached hereto,)but Paragon reneged on the agreement and defendants Burke and USGOA refuse to represent him on the unwarranted refusal to put him on schedule. Defendants Sprague and Jimenez are tacking onto that illegal policy.

15.    The contract co-plaintiffs were hire under have succession clauses for subsequent contracts, (see attached section 1.3 in both exhibits "A"&"B.")

## II

### **WRONGFUL DISCHARGE**

**16.**    Plaintiffs incorporate herein as if set forth in full

all prior allegations. Attached hereto ate the current and

previous CBAs controlling in this case. Both plaintiffs had

a property interest in their employment and were entitled

to the protections of the CBA and the due process provided

therein; including representation by UGSOA, which was

wrongfully withheld. Also ignored was the **progressive**

**discipline guaranteed in the CBA**, Ibd. No specific reasons

were given to plaintiffs just broad generalities. No dates

times, specifics, what was not done, what should have been

done instead. No rule violations, cited. In fact Paragon

**withheld evidence** to wit; an email allegedly written by

Court Clerk Keith Holland, Lt Fazila, Captain Nadeau, DVD

footage reviewed by them, and exculpatory statements by

Court Security Officer "Tim," last name unstated, which

amounts to prosecutorial misconduct, which calls for the

disciplinary action be set aside on those grounds alone.

**17.**    The charged officers had no chance to review this

evidence or review it with their union representative or

attorney. Likewise, no opportunity to interview or cross-

examine the witnesses Paragon have alleged. Plaintiffs had

no chance to even see Court clerk, Keith Holland's email

(should it really exist) and what does it really say, and
was it solicited from him by management. Plaintiffs' have
every reason to question defendants' credibility.
Therefore, the good cause requirements were also ignored.
Since Paragon is the alter ego of DHS/FPS plaintiffs also
had the due process clause of the 5th amendment protecting
them. They were denied those entitled rights as well. UGSOA
are management "moles." It is the case of the wolf guarding
the henhouse. This form of theater cannot stan

### III

### BREACH OF CONTRACT

18.    Plaintiffs incorporate as is set forth in full all
prior allegations of this complaint. Defendants and each of
them breached the contractual provisions of the CBA (both
exhibit "A" & "B" versions.) Including but not limited to
violation of covenant of good faith and fair dealing, and
the duties of fair representation under the NLRA.
Plaintiffs are beneficiaries and represented parties
through their union UGSOA, of both CBAs.


### IV

### UNFAIR LABOR PRACTICES (NLRA)

19.    Plaintiffs incorporate herein as if set forth in full
all prior allegations of this complaint. On August 3, 2025

Defendant Sprague confirmed his willful and intentional violation of his duty of fair representation by stating to Plaintiff Engel; i) plaintiffs ae not members of the union because of their dismissal or refusal to schedule; ii)the plaintiffs are no longer dues payors as a result of being dismissed or refusal to schedule; iii) this decades old practice of abandoning members in the self-feeding "catch-22" that a member is no longer a member when dismissed then they cannot represent them; has been the illicit practice all along what change now? UGSOA have never done a disciplinary arbitration for this unit in at least ten years. The unfair speak for itself. UGSOA, Sprague, Jimenez, and Burke have violated their duty of fair representation by not acting in good faith, not investigating or filing grievances in the first place, personal dislike of plaintiffs (Sprague was very rude and hostile to plaintiffs when asked for help stating "do not call me back, I will not take your call.") This was both patent and appalling. Defendant Sprague clearly dislikes co-plaintiffs. These practices are quintessential **unfair** labor practices. This is in conspiracy with Paragon which does not provide full discovery or arbitration-a green light to continue with these violations of inter alia NLRA.

V

**RACKETEERING (RICO)**

20.    Plaintiffs incorporate herein as if set forth in full
all prior allegations of the complaint. Plaintiffs are
entitled to relief under RICO statute 18 USC 1961-1968.
Recently Paragon was exposed for having embezzled $15
million form their employer DHS/FPS. They have offered $52
million in settlement. This qualifies as a RICO
organization. UGSOA also qualifies as a RICO organization
as they have accepting fees for a decade and have provided
no services and keep the money themselves. There has been
no credible audit as to where this money goes. These
agencies have no credibility.


VI

**VIOLATION OF DUE PROCESS (5th AMENDMENT, US CONSTITUTION)**

21.    Plaintiffs incorporate herein as if set forth in full
all prior allegations of this complaint. Plaintiffs are
employees of DHS/FPS and their alter ego Paragon are
entitled to due process under the due process clause of the
5th amendment. They are not at-will, Id. and have a
protectable property interest in their jobs. They have

concealed very relevant and exculpatory evidence. They
provide no concrete reasons for Vyalkov's dismissal or
Engel not being scheduled for work since October 2022.
Defendnats attempt to minimize plaintiffs as contractors
always the case in employment. All employment is
contractual either quid pro quo or statute (civil service.)
Plaintiffs as all PSOs are not "sub" contractors nor
"independent" contractors. They are employees which always
has a "contract" element involved as stated above.
Plaintiffs are entitled to 5th Amendment due process as well
which they have been denied.

### VII

### REQUEST FOR CLASS ACTION STATUS

22.    Plaintiffs incorporate herein as if set forth in full
all prior allegations of this complaint. Plaintiffs request
class action status. There are about 150 PSOs (plaintiffs)
in this matter. More than ample to qualify for class action
status. Defendant UCSOA must be accountable to its members
and it has not been. A class action suit against defendant
would require them to comply with the fair representation
duties of the NLRA.

## VIII

### REQUEST FOR COURT APPOINTED COUNSEL

23.    Plaintiffs incorporate herein as if set forth in full

all prior allegations of this complaint. Since defendant

UGSOA has refused to hire counsel for its members at the

arbitrations they never do it is requested that competent

counsel be appointed at the expense of UGSOA. As required

for class action suits the firm representing the class must

be large enough and have sufficient resources to

competently represent the class. Here the class is

similarly situated members. The same issue ;to wit union

representation; the union is an appropriate entity to

represent its members. As class action suit will benefit

all of the class members. Plaintiff Vyalkov can be the

representative plaintiff. Any individual can sue under this

issue. The class meets eligibility for class status.

Plaintiffs request the law firm of Messing, Adams, Jasmine

& Shore LLP, be appointed as class action counsel.

## IX

### REQUEST A SPECIAL MASTER BE APPOINTED

24.    Plaintiffs incorporate herein as if set forth in full

all prior allegations of this complaint. Plaintiffs request

this court appoint a special Master (a monitor) to oversee

the compliance of the defendant union UGSOA as its history

of both nonfeasance and malfeasance shows they cannot ne

trusted to comply with the NLRA on their own.


**X**

**REQUEST FOR AN AUDIT**

25.    Plaintiffs incorporate herein as if set forth in full

all prior allegations of this complaint. Based on the above

nonfeasance and malfeasance and no accountability ever

being had about UGSOA finances plaintiff's request a court

ordered audit of its expenditures. Local #223 has no office

in the Sacramento area. The local union officers use

private cell phones. With no office employees or overhead,

and without representing its membership where is the money

going. This is the same question for the union's HQ in

Massachusetts (national). Half of the fees go to national

with no representation, or arbitrations being done. Where

is the money going? Is this the reason they never

arbitrate?


**CONCLUSION**


Based on the foregoing co-Plaintiffs Alex A. Vyalkov and Julius

M. Engel request the following remedies;

a. General damages according to proof;

b. Punitive damages according to proof;

c. Injunctive relief, including but not limited to, UGSOA filing for arbitration regarding co-plaintiffs and one PSO Carares, return to work of co-plaintiffs (and Carares), back pay, front pay, back benefits, and to be made whole;

d. Designation as Protective Security Officers (POSs) as class action suit;

e. Appoint counsel to represent the protected class at the expense of defendant UGSOA;

f. Appoint a special master to oversee compliance, with the court's order by USGOA, at the expense of UGSOA;

g. Request a full audit be completed at the expense of USGOA. Including but not limited to receipts of union fees and expenditures of said fees.

h. Coste of suit and any attorney fees;

i. Other such relief the court deems proper.

*Co-Plaintiffs demand a jury trial.*


_____
Alex A. Vyalkov
Plaintiff In Pro Se


_____
Julius M. Engel, JD
Co-plaintiff
In Pro Se

## VERIFICATION

I Alex A. Vjalkov, declare under penalty under the laws of the state of California, the foregoing is true and correct to the best of my knowledge and belief.

Executed, this 27th day of August, 2025 at Sacramento, California.

Alex A. Vyalkov,
Plaintiff, Declarant


I Julius M. Engel, declare under penalty under the laws of the state of California, the foregoing is true and correct to the best of my knowledge and belief.

Executed, this 27th day of August, 2025 at Sacramento, California.

Julius M. Engel, JD
Plaintiff, Declarant

Between

## Triple Canopy, a Constellis Company

And the

## United Government Security Officers of America, International Union

And

## Its Local 223

## Representing

# PROTECTIVE SECURITY OFFICERS

## At
## Sacramento, CA and Surrounding Areas

**October 1, 2021 through September 30, 2024**

1

"A"

## Section 1.2 - Employees

Whenever used in this Agreement, the term "employees" shall mean all security officers employed by the Company in the counties listed in section 1.1a working inside and outside of Federal Buildings or other areas while under the control of the employer who are employed pursuant to a contract between the Company and the United States Department of Homeland Security, Federal Protective Services ("DHS/FPS") Contract, or its successor(s), excluding those individuals listed in section 1.1b or as defined by the National Labor Relations Act It is expressly agreed and understood between the parties that persons enrolled or participating in pre-assignmen training programs offered by the Company shall not be considered employees under this Agreement.

Salaried employees shall not perform the work of the employees covered by this Agreement.

## Section 1.3 - Probationary Employees

All newly hired employees or those rehired after termination of their seniority, shall be classified as probationary employees for a period of ninety (90) calendar days from the date of hire or rehire. During the probationary period the employment relationship between the Company and the probationary employee shall be at will and the probationary employee may be subject to discipline or discharge at the discretion of the Company without regard to the provisions of Article 14 of this Agreement.

The union will be notified whenever a new hire training class is scheduled. The Union shall have the right to speak to the new hires, during new hire training preferably after passing their firearms qualification. The company will facilitate the Union by allowing time to speak for one (1) hour. Upon completion of training and certification the Company will provide a roster of all new hires to the Union. At no time shall the Company incur any cost associated with this meeting, to include payment of wages of any kind. Participation of "new hires" is voluntary and shall not be required by the employer or the union.

## Section 1.4 - Full-time Employee

A full-time employee is defined as employees who regularly work a minimum of 36 hours per week.

## Section 1.5 – Reserve Officers

Reserve officers are expected to work the schedule sent to them each week to ensure the company meet scheduling requirements at all federal facilities and is prepared for emergency guard service requests from th Federal Protective Service (FPS). Each week, Reserve Officers schedule may include variable days, consisting o day, swing, and grave shifts. In addition, Reserve Officers must be available for emergencies and on an as neede basis. Once a PSO is qualified to stand post, they are expected to work the schedule sent to them each week.

**Section 1.6 - Successors**

This Agreement shall be binding upon all parties, their successors, and assigns. In the event of a sale or transfer of the business of the Employer, or any part thereof, the purchaser or transferee shall be bound by this Agreement in as far as applicable law allows.

## ARTICLE 2 UNION SECURITY

**Section 2.1 - Membership**

(a) <u>Membership</u>:  All employees covered by this Agreement shall become and remain members of the Union within thirty-one (31) days after employment or the effective date of this Agreement, whichever is later, and as a condition of continued employment shall maintain their membership in the Union. Membership, for purposes of this provision, will be deemed satisfied by the employee: (i) becoming a member in good standing by paying the uniform initiation fee and monthly dues and charges pursuant to the Union's Bylaws, or (ii) paying a service fee which shall be equal to the percentage of the Union initiation fee and representative monthly dues which reflects the proportion of the amount the Union's collective bargaining and contract servicing expenditures bear to the Union's total expenditures.

(b) <u>Religious Objectors</u>:  An employee who is a member of and adheres to established and traditional tenets or teachings of a bona fide religion, body, or sect which has historically held conscientious objections to joining or financially supporting labor organizations shall not be required to join or financially support the Union; except that, in lieu of tendering dues or a service fee, such an employee shall pay the amount of monies specified under Section 2.1 A, B or C to a tax exempt organization (under Section 501(c)(3) of the IRS Code), as selected by the employee.

(c) <u>Enforcement</u>:  In the event an employee refuses to comply with this Article for a period of greater than three (3) months, the Union will provide the Employer notification of such refusal and will provide the Employee evidence, in the form of a certified letter sent to the Employee, that the Employee was notified of the delinquency. Upon receiving such notification, the Employer will advise the employee that failure to bring the account current within thirty (30) days may result in termination of employment. At the expiration of the 30-day period, the Employer will terminate the employee unless, in the Employer's judgment, such termination would cause disruption to the operations of the Employer. If the employee fails to bring the account current, the Employer shall make every effort to relieve the staffing shortfall causing the operational necessity and terminate the employee within three (3) months. The obligations set forth in this Section 3.1 shall only be effective to the extent permitted by controlling law. Any enforcement of this section to include termination by the employer, the employee shall not have no right under the grievance and arbitration in this Agreement.

7

**Section 11.7 - Seniority List Request**

Upon request, the Company shall provide the Local Union Executive Officers a current union and contract list seniority with name email address if known, home address, phone number, date of hires and all seniority dates of union members, no more than once per month.

**Section 11.8 - Return of Personnel to the Bargaining Unit**

A person, who, after transfer or promotion out of the bargaining unit, remains in the continuous employ of the Company, may be transferred, at the sole option and discretion of the Company, and notwithstanding any other provision of this Agreement, to any job classification that the employee previously held. If the transfer of such person to the bargaining unit requires the layoff of an employee, the employee with the least Union seniority in the Union seniority pool to which the transfer occurs will be transferred or laid off at the Company's discretion; provided that, if the transferee does not have more Union seniority than the employee with the least Union seniority in that Union seniority pool, the Company may not affect the transfer. An employee who accepts a permanent management position with the Company shall retain the Union seniority the employee had at the date of the promotion to supervision/management, but shall not accumulate additional Union seniority while in that capacity; provided that, if the employee is in the supervision/management position for a period of one hundred twenty (120) days the employee shall lose his or her Union seniority.

## ARTICLE 12 DISCIPLINE & DISCHARGE

**Section 12.1 – Discipline**

Employees shall be subject to discipline for just cause. The Company's discipline policy is outlined in the "Triple Canopy Progressive Disciplinary Policy". The Company recognizes the provisions of progressive discipline, as outlined below:

- Verbal warning (Documented for the Record)

- Written Warning

- Suspension

- Termination of Employment

The Company uses a rolling calendar year, each violation is considered active for a twelve (12) month period beginning on the date of infraction and are not considered for subsequent discipline after 12 months.

In the event of a discharge or disciplinary action by the Company, the affected Employee will be given a written reason for the action, the employee is permitted to respond to the charge in writing.

28

# Collective Bargaining Agreement

## Between

## Paragon Systems, Inc.

## And the

## United Government Security Officers of America, International Union

## And

## Its Local 223

## Representing

## PROTECTIVE SECURITY OFFICERS

## In

## Sacramento, CA and Surrounding Areas

## March 1, 2025 through February 29, 2028

"B"

## Section 1.3 - Probationary Employees

Newly hired **Bargaining Unit Members** or those rehired after **the** termination of their seniority shall be **designated as** probationary employees for a period **lasting** ninety (90) calendar days **commencing** from the date of hire or rehire. **Throughout this** probationary period, the employment relationship between the Company and the probationary **Bargaining Unit Member** shall be "at-will", **affording the Company the authority to impose disciplinary measures or discharge** the probationary employee **without consideration for** the provisions **delineated in** Article 13 of this Agreement.

The Union **shall receive notification** whenever a new hire training class is scheduled. The Union shall have the right to **address** new hires, **preferably following the successful completion of** their firearms qualification **during the new hire training.** The company **shall** facilitate **this** by **allocating** one (1) hour **for the Union to communicate with the new hires**. Upon the **conclusion of their** training and **attainment of** certification, the Company will **furnish** the Union **with a roster containing the names, email address, physical address, and phone number of all new hires. It is explicitly stipulated that, a**t no **point** shall the Company **bear** any **expenses related to** this meeting, including **any form** of wage **payments. The p**articipation of "new hires" **remains entirely** voluntary and shall not be **mandated** by **either** the employer or the union.

## Section 1.4 - Full-time Employee

A full-time **Bargaining Unit Member** is defined as **Bargaining Unit Members** who regularly work a minimum of 36 hours per week.

## Section 1.5 – Roving Officers

**Roving** officers **are Bargaining Unit Members without an awarded bid/permanent post. Roving Officers are obligated to adhere to the weekly schedule provided to them, with the aim of ensuring the Company's compliance with scheduling obligations within the Bargaining Unit as outlined in this Agreement** at all federal facilities **and readiness for any** emergency guard service requests from FPS. **The weekly schedule for Roving Officers may encompass various shifts, including** day, swing, and grave shifts. **Once a bargaining Unit member is certified to assume** post, they are expected to **follow the weekly schedule as provided. The Company may elect to impose a minimum amount of hours that a roving officer must work, provided that the Bargaining Unit Members shall be offered at least those amount of hours before any action is taken to enforce the minimum.**

## Section 1.6 - Successors

This Agreement shall **remain in force and be** binding **on** all parties **involved,** including their **respective** successor(s), and assigns. In the event of a sale or transfer of the **Employer's** business, or any **portion** thereof, the purchaser or transferee shall **also be subject to the terms of** this Agreement **to the extent permitted by** applicable law.

## **ARTICLE 2 UNION SECURITY**

## Section 2.1 - Membership

(a) <u>Membership</u>:  **Every Bargaining Unit Member** covered by this Agreement shall become a member of the Union within thirty-one (31) **calendar** days **of commencing** employment or the effective date of this

**Section 11.7 - Seniority List Request**

Upon request, the Company shall provide the Local's Executive Officers with **the** names, email addresses, home addresses, phone numbers, dates of hire and all **types of** seniority dates of **current Bargaining Unit Members**.

## ARTICLE 12 DISCIPLINE & DISCHARGE

**Section 12.1 – Discipline**

**All Bargaining Unit Members are required to follow the policies and procedures in the Paragon handbook, their post orders and Government rules and policies applicable to the contract and duty location. No Bargaining Unit member shall be discharged or disciplined without just cause and discharge and discipline matters shall be subject to the grievance and arbitration procedures contained in this Agreement. The Company recognizes the provisions of progressive discipline, as outlined below:**

- Verbal warning (Documented for the Record)
- Written **Reprimand**
- **One Day** Suspension
- **Three Day Suspension and Final Warning**
- Termination **(or lengthy suspension at management discretion)**

**Section 12.2 - Just Cause**

**For the following alleged offenses, the parties agree to limit the jurisdiction of any arbitrator hearing a grievance under this Agreement to a determination of whether or not the accused Bargaining Unit Member actually committed the offense. If the arbitrator finds in the Company's favor on that question, an arbitrator shall not have the authority to reduce the discharge or otherwise modify the discipline imposed by the Company for a proven violation of any of the following:**

**A.  Violation of Rules and Regulations of Government Public Building and Grounds, 41 C.F.R. Sections 101-20.3.**

**B.  Neglect of Duty (including sleeping while on duty or action which causes the assessment of a penalty against the Company by the United States Government or DHS).**

**C.  Insubordination (including, without limitation, deliberate failure to carry out assigned tasks, refusal of a direct order, abusive language directed toward a supervisor, and similar conduct).**

**D.  Conducting personal affairs during official time without prior approval from the Officer's supervisor or Contract Manager.**

**E.  Falsification or unlawful concealment, removal, mutilation or destruction of any official documents or records, and/or concealment of material facts by willful omissions from official documents or records.**

**F.  Fighting on Government property or while on duty. Participating in disruptive or disorderly conduct which interferes with the normal and efficient operations of the Government or Company.**

**G.  Theft, vandalism, or criminal acts.**

(b) The failure of the Employer to answer a grievance within the time limits specified shall permit the grievant or the Union, whichever is applicable to a particular step, to proceed to the next step of the grievance procedure.

## Section 13.3 – Written Presentation

All grievances, regardless of the initial step, shall be in writing and signed by the grieving **Bargaining Unit Member** and or a Union **Member** and shall:

(a) state the facts of the grievance as then known to the Union, and

(b) set forth the specific section(s) of the Agreement that are claimed violated,

(c) state the requested remedy, and

(d) once filed, a grievance may not be modified **unless agreed to by mutual consent by both parties.**

All written answers submitted by the Company shall be signed and dated by the appropriate Company representative and shall be presented to the aggrieved employee and the Union. Submission via email is acceptable.

## Section 13.4 - Procedure

Except as otherwise expressly stated in this Agreement, the procedures set forth in this Article shall be the sole and exclusive remedy for any grievance presented by the Union or any employee. Grievances involving the discharge or suspension of an employee will begin at Step 3. All grievances shall be resolved in the following manner:

### Step 1 – Notice to Captain

The **Bargaining Unit Member** and/or his Union representative shall present the grievance or dispute in writing to the **Captain** within ten (10) calendar days of its occurrence or when the employee knew, or by reasonable diligence should have known, of its occurrence. The **Captain** shall respond in writing to the grievance within ten (10) calendar days of his/her receipt of the grievance to the Union.

### Step 2 – Notice to Contract Manager

If the grievance is not settled at Step 1 or the **Captain** does not respond within ten (10) calendar days of the Step 1 notice, the **Bargaining Unit Member** and/or his or her Union representative shall, within ten (10) calendar days of the date the **Captain** responded or the date on which the **Captain** should have responded, whichever is sooner, submit the grievance in writing to the Contract Manager or his/her designee. The Contract Manager or his/her designee shall respond to the grievance within ten (10) calendar days of receipt of the grievance. **Should the Contract Manager or designee hold a Step 2 meeting such meeting shall occur within ten (10) calendar says from receipt of the step grievance to the Contract Manager or designee unless the parties mutually agree to extend such time in writing.**

### Step 3 – Notice to Director of Labor Relations

If the grievance is not settled at Step 2 or if the Contract Manager or his/her designee does not respond within ten (10) calendar days, the Union shall within ten (10) calendar days, present the grievance in writing to the

33

Company's Director of Labor Relations or his/her designee. The Company's Director of Labor Relations or his/her shall respond in writing to the grievance within ten (10) calendar days.

### Section 13.5 - Representation

A **Bargaining Unit Member** shall be permitted to have a Union representative at each step of the grievance procedure.

### Section 13.6 – Arbitration

If a grievance is not settled at Step 3, the Union may, within fifteen (15) business days after the receipt of the Step 3 response, proceed to binding arbitration. Notice that arbitration is desired must be received by the Company fifteen (15) business days after the Union receives the Step 3 response. **For any step in which the Union does not receive a response from the Company in the required timeframe, the Union shall consider the grievance denied at that step and may proceed to the following step.**

The moving party shall be responsible for obtaining a panel of no less than seven (7) arbitrators from the Federal Mediation and Conciliation Service from which the parties shall select an arbitrator. **This** request must be made within thirty (30) calendar days **of the demand for** Arbitration. Failure to request the list of Arbitrators within thirty (30) calendar days, shall make the grievance null and void and the matter shall be considered withdrawn by the moving party.

Except as otherwise expressly provided herein, the American Arbitration Association's Rules for the Resolution of Employment Disputes shall control the resolution of any and all disputes submitted to arbitration under this Agreement. The Arbitrator shall conduct a hearing on the grievance. The decision or order of the Arbitrator shall be final and binding and shall be in writing. Any back pay award shall be reduced by any sums received as unemployment compensation or from other interim employment.

It is agreed and understood by the Parties that the failure of the Arbitrator to issue the award within ninety (90) calendar days after the conclusion of the arbitration proceeding shall render any award issued null and void. It is further agreed that, as a condition of selecting an arbitrator, all prospective arbitrators shall be informed in writing, prior to retention of the arbitrator, that the arbitrator's award must be rendered in writing within ninety (90) calendar days of the close of the hearing or receipt of briefs. If an award is rendered null and void because of the failure of an arbitrator to render a timely decision either party may re-submit the dispute to arbitration before another arbitrator within ten (10) calendar days of the expiration of the ninety (90) calendar day period.

The Arbitrator shall have jurisdiction and authority to only apply and interpret the provisions of this Agreement. It is understood and agreed to by the Union and the Employer that the arbitrator shall have no power to add to, subtract from, or modify any of the terms of this Agreement. The arbitrator is permitted to weigh evidence to determine if the action taken is supported by just cause pursuant to the CBA, policies of the Employer and applicable State and Federal law. The arbitrator is not permitted to substitute their own judgment in making a decision which would be contrary to the CBA, policies of the Employer, State, or Federal law.

# Section 1.  Physician's Certification

| | |
|---|---|
| **Candidate's Name**<br>(Last, First, Middle) | ENGEL   Julius   M |
| **Candidate's**<br>Date of Birth (Year/Month/Day) | 1956/07/20 |
| **Candidate's SSN** | 006 64 8604 |

**SUPPORTING AND GENERAL COMMENTS**

1. Does the candidate have any limiting factors?  ☐ Yes  ☑ No

2. Summarize below any medical findings which, in your opinion, would limit this candidate from successfully performing PSO tasks or would otherwise make this candidate a hazard to himself/herself or others.  If none, state none below.

3. Insert only this page of this exhibit in Tab A of the PSOs personnel file.

| | | |
|---|---|---|
| **Physician's Signature** | William Comer  NP | **Date** 6/2/23 |
| **Physician's Name**<br>(Print/Stamped) | William Comer  NP | **Time** 1400 |
| **Address** | | Jonathan Rosenson, MD<br>CA License: A102680 |
| **City** | Concentra Medical Center<br>384 Embarcadero West<br>Oakland, CA 94607<br>Ph: 510-465-7685 Fax: 510-465-3840 | SEP 12 2023 |
| **State** | Zip Code | |
| **Phone Number** | | HSHQE1-17-D-00001 Page 194 of 295 |

"C"